UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

REBECCA BRITT,

    Plaintiff,

    v.

WASHINGTON METROPOLITAN
AREA TRANSIT AUTHORITY,[1]

    Defendant.

Civil Action No. 23-844 (JDB)

## MEMORANDUM OPINION

Plaintiff Rebecca Britt, a longtime employee of the Washington Metropolitan Area Transit Authority ("WMATA") Transit Police, clashed with her former supervisor and was subsequently passed over for a promotion. She sued WMATA, asserting claims of race and sex discrimination, hostile work environment, and retaliation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and of 42 U.S.C. § 1981. Before the Court is WMATA's motion to dismiss Britt's second amended complaint. For the reasons that follow, the Court will grant the motion as to Britt's discrimination claims but deny it as to Britt's hostile work environment and retaliation claims.

---

[1] Plaintiff named as defendant the "Washington Metropolitan Area Metro Transit Police." 2d Am. Compl. for Injunctive Relief & Compensatory Damages [ECF No. 17] ("Compl.") at 2. Defendant maintains that its "correct legal name" is the "Washington Metropolitan Area Transit Authority ('WMATA')," and asks that this name "be substituted going forward." Def.'s Mem. of Law in Supp. of Mot. [ECF No. 19-1] at 1 n.1. Given plaintiff's lack of opposition to this request and the fact that the Metro Transit Police Department "is a unit of" WMATA, Washington v. WMATA, 788 F. App'x 1, 2 (D.C. Cir. 2019) (per curiam); see Compl. ¶ 2, the Court will use defendant's legal name.

**Background**

I. **Factual Background**

Rebecca Britt is a Black woman and a longtime employee of WMATA, a "multi-jurisdictional transit authority" in the Washington, D.C., metropolitan area.  2d Am. Compl. for Injunctive Relief & Compensatory Damages [ECF No. 17] ("Compl.") ¶¶ 1–2.  She works in WMATA's Metro Transit Police Department (the "Department"), which "provides police and security presence" in connection with WMATA's transit services.  Id.  Britt joined the Department in 1997 and has steadily progressed through the ranks.  See id. ¶¶ 13–25.  She started as a Metro Transit Police Officer and was promoted to Detective in 2004, to Sergeant in 2009, to Lieutenant in 2018, and to Acting Captain in July 2020.  Id. ¶¶ 13, 16, 18, 22, 23.  Britt was promoted to Captain in December 2020, becoming the fourth Black female Captain in the history of the Department.  Id. ¶ 25.

Britt alleges that the Department has a history of discriminating against Black people, and against Black women in particular.  See id. ¶¶ 26–47.  Her personal allegations in this suit primarily concern her relationship with Deputy Chief Stephen Boehm, who served as her direct supervisor between August 2020 and July 2021.  Id. ¶¶ 24, 89.  Britt takes specific issue with two patterns of conduct during this period.  First, beginning at some point in 2020, Boehm ordered Britt to "proofread and edit" another Captain's "reports and investigations" before they were sent to Boehm, "which essentially doubled [Britt's] work volume."  Id. ¶ 48.  Despite this extra work, Boehm disparaged Britt during meetings in which she was absent and praised "how well [the other Captain's] reports were written," despite knowing full well that "it was [Britt's] editing that made them 'pristine.'"  Id. ¶ 50.  Other Department employees became aware of this arrangement and began calling Britt Boehm's "admin 'ho."  Id. ¶ 51.  Britt complained to Boehm about the extra

work and pointed out that expecting the only Black woman Captain to fill this role perpetuated stereotypes, but Boehm ignored these complaints. Id. ¶¶ 52, 54. Eventually, Britt complained to higher-ups about this arrangement and refused to continue proofreading and editing the other Captain's work. Id. ¶ 53.

Second, in response to Britt's requests for additional staffing, Boehm assigned her Monica Hockaday—a Black female Lieutenant. Id. ¶¶ 56, 59. But rather than allowing Britt to manage Hockaday, Boehm ordered Britt to discipline Hockaday "for things that were either not substantiated, not work related, or not worthy of discipline." Id. ¶ 60. For example, Boehm demanded that Britt discipline Hockaday for remaining in her office and delegating minor calls for service in the field—even though Hockaday's white colleagues engaged in the same behavior. Id. ¶¶ 64–66. When Britt refused to discipline Hockaday, Boehm "threatened to demote [Britt], threatened to rescind her position, screamed at her over the phone, attempted to bully and intimidate [her], and launched baseless and unfounded disciplinary action against her." Id. ¶ 63; see id. ¶ 67. From that point forward, Boehm "constantly undermin[ed] [Britt's] authority" and "question[ed] her performance and leadership." Id. ¶ 68. Eventually Britt did discipline Hockaday, "but did so because of work related matters which were substantiated by [Britt's] direct knowledge and observation." Id. ¶ 61.

More generally, Britt alleges that Boehm yelled at her and humiliated her in front of colleagues on numerous occasions. Id. ¶ 75. He denied her proper staffing, micromanaged her work, and contacted her on leave to inquire about minor issues, which he did not do to Britt's white colleagues. Id. ¶¶ 56, 76–77. He "intentionally undermined" Britt's authority, disregarding the chain of command and contacting lower-ranking officers directly to circumvent Britt. Id. ¶¶ 78–79. He required Britt to inform one of his direct reports (a Black Lieutenant) that they were being

transferred rather than telling them himself, which was seen as a major slight to the Lieutenant. Id. ¶¶ 70–74. And Boehm "repeatedly lied about [Britt's] performance and her actions" to "stymie [her] advancement," including by denying her the recognition and award that other colleagues received—and she earned—for service on January 6, 2021. Id. ¶¶ 84–88.

On July 20, 2021, after about a year of reporting to Boehm, Britt was transferred away from his direct supervision. Id. ¶ 89. The next business day, she filed an internal Equal Employment Opportunity ("EEO") complaint alleging that Boehm discriminated against her because of her race and gender and her opposition to his behavior. Id. The Department's EEO office conducted an investigation and ultimately substantiated her complaint. Id. ¶ 90.

After filing her complaint, Britt "was subjected to [a] clear and escalating campaign of retaliation" by Boehm. Id. ¶ 92. Boehm had become Commander of the Office of Professional Responsibilities and Inspections, and he used this position to launch "repeated baseless and disruptive administrative investigations" against Britt, forwarding the "bogus allegations" to her supervisor. Id. ¶¶ 92–93. Britt was exonerated following each investigation. Id. ¶ 94. In addition to the investigations, Boehm also engaged in a "whisper campaign" to discourage other officers from supporting Britt or working with her. Id. ¶ 95. Boehm's retaliatory efforts "humiliate[d] [Britt], undermine[d] her credibility, isolate[d] her from her colleagues, and stymie[d] her ability [to] complete work-related matters." Id. ¶ 96.

On February 1, 2022, Britt initiated a charge with the Equal Employment Opportunity Commission ("EEOC"). See Ex. 1 to Def.'s Mot. to Dismiss Pl.'s 2d Am. Compl. [ECF No. 19-2] ("1st EEOC Compl.") at 2. She filed another document in relation to this charge on April 26, 2022. Id. at 2–3. Also in April 2022, Britt met with Chief Michael Anzallo, the head of the Department, to discuss her complaints about Boehm. Compl. ¶ 98. Anzallo claimed that he was

waiting for documents from the internal EEO investigation to determine what action to take against Boehm.  Id.  To date, no action has been taken against Boehm.  Id. ¶ 99.

In March 2023, Britt sought to be promoted to Deputy Chief.  Id. ¶ 100.  She was interviewed for the position, but the role ultimately went to a man with "less seniority" and "substantially less experience in patrol operations" than Britt.  Id. ¶ 101.  Britt then filed a second EEOC charge alleging that she was passed over for the promotion due to her prior complaints about Boehm.  Id. ¶ 103.

Due to the "constant stress" occasioned by Boehm's actions, Britt has had to take "substantial leave" and seek mental health counseling.  Id. ¶ 105.  Her blood pressure is "negatively affected" by this stress.  Id. ¶ 107.  Britt has put in her retirement papers and plans to cease working as a uniformed officer in the Department.  Id. ¶ 106.

## II.    Procedural History

Britt filed the present action against WMATA in March 2023.  See Compl. for Injunctive Relief & Compensatory Damages [ECF No. 1].  She filed an amended complaint in April 2023. See 1st Am. Compl. for Injunctive Relief & Compensatory Damages [ECF No. 4].  WMATA moved to dismiss the amended complaint, and the parties briefed that motion.  Britt then moved to amend again to add failure-to-promote claims based on her second EEOC charge.  See Pl.'s Mot. for Leave to Amend the 1st Am. Compl. [ECF No. 15] at 1.  WMATA consented to the amendment, see Def.'s Resp. to Pl.'s Mot. for Leave to Amend [ECF No. 16] at 1, and the Court granted leave to amend, see Nov. 9, 2023 Min. Order.

Britt filed her second amended complaint in November 2023.  See Compl. at 2.  This operative complaint asserts ten counts: race and sex discrimination (Counts I and VII), hostile work environment based on race and sex (Counts III, V, and IX), and retaliation (Counts II, IV,

VI, VIII, and X).  See id. at 19–32.  The two discrete discrimination counts assert violations of

Title VII; the remaining eight counts assert violations of either Title VII or § 1981.  See id.[2]  Britt

seeks upwards of $3 million in compensatory damages, plus attorney's fees and injunctive relief.

Id. at 32–33.

WMATA moved to dismiss the second amended complaint.  See Def.'s Mot. to Dismiss

Pl.'s 2d Am. Compl. [ECF No. 19]; Def.'s Mem. of Law in Supp. of Mot. [ECF No. 19-1] ("Mot.").

WMATA advances three principal arguments: (1) the entire complaint should be dismissed

pursuant to Federal Rule of Civil Procedure 41(b) due to various deficiencies (or, at the least, the

Court should strike certain allegations); (2) the discrete discrimination counts should be dismissed

for failure to timely exhaust administrative remedies; and (3) each count fails to state a claim.  See

Mot. at 7–10, 12–26.  Britt opposed WMATA's motion, see Pl.'s Opp'n to Mot. [ECF No. 21]

("Opp'n"), and WMATA filed a reply, see Def.'s Reply in Further Supp. of Mot. [ECF No. 22].

The motion is thus fully briefed and ripe for decision.

### Legal Standard

To survive a motion to dismiss, "a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556

U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  In deciding

such a motion, courts must generally "accept the [complaint's] factual allegations as true and draw

all reasonable inferences in the plaintiff's favor."  Sanchez v. Off. of State Superintendent of Educ.,

45 F.4th 388, 395 (D.C. Cir. 2022).  Courts need not, however, accept "legal conclusions" or "legal

contentions couched as factual allegations" in the complaint, Gulf Coast Mar. Supply, Inc. v.

---

[2] Britt's complaint contains a few stray references to 42 U.S.C. § 1983.  The Court does not understand her to be pursuing a § 1983 claim, and in any event WMATA is not a "person" within the meaning of that statute.  See White Coat Waste Project v. WMATA, Civ. A. No. 23-1866 (JEB), 2024 WL 68256, at *3 (D.D.C. Jan. 5, 2024).

United States, 867 F.3d 123, 128 (D.C. Cir. 2017), nor must they "accept as true the complaint's factual allegations insofar as they contradict exhibits to the complaint or matters subject to judicial notice," Scahill v. District of Columbia, 909 F.3d 1177, 1186 (D.C. Cir. 2018) (internal quotation marks omitted).

### Analysis

#### I.   Technical Challenges

##### A.   Rule 41(b) Dismissal

WMATA's threshold argument is that Britt's entire complaint should be dismissed for "fail[ure] to . . . comply" with the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 41(b). WMATA points to Rule 8(a), which requires that a complaint contain, inter alia, "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This Rule may be violated by a complaint that is "needlessly long" or "highly repetitious, or confused, or [that] consist[s] of incomprehensible rambling."  Wright & Miller, Federal Practice and Procedure § 1217 (4th ed. June 2024 update).  A Rule 41(b) dismissal on this basis is committed to district courts' discretion, and courts are generally reluctant to take this course.  See id.; see also Ciralsky v. C.I.A., 355 F.3d 661, 668–69 (D.C. Cir. 2004).

WMATA contends that Britt's complaint warrants dismissal under Rules 41(b) and 8(a) because it "is more than 30 pages" long and "contains irrelevant and confusing material," including Britt's employment history outside of the time period she worked for Boehm, allegations regarding WMATA's treatment of Black women generally, and allegations from two individuals with limited personal knowledge of Britt's circumstances. Mot. at 8; see id. at 7–9.  The Court disagrees.  While not a model of clarity in all respects, Britt's complaint is a far cry from those complaints that have been dismissed as violative of Rule 8(a).  WMATA's own cases make this clear: in one, the district

court dismissed a 119-page, "repetitive, discursive and argumentative" complaint, Ciralsky, 355 F.3d at 669; in another, the court dismissed a 78-page complaint that, after five attempts, still contained "prolix, irrelevant, and scattershot assertions of fact that [were] not clearly or properly aligned with the myriad legal claims that randomly appear[ed]" in the document, Jiggetts v. District of Columbia, 319 F.R.D. 408, 414 (D.D.C. 2017); see also Mot. at 7–8. Britt's complaint, in contrast, is 33 pages long and generally proceeds in an orderly fashion.

Even assuming the specific allegations identified by WMATA are indeed surplusage, some surplusage in an otherwise orderly complaint "can and should be ignored"—the Court should "bypass the dross and get on with the case." U.S. ex rel. Garst v. Lockheed-Martin Corp., 328 F.3d 374, 378 (7th Cir. 2003); see also Koch v. White, 134 F. Supp. 3d 158, 164 (D.D.C. 2015) ("Requiring Plaintiff to fine[-]tune his complaint . . . is simply not worth further delaying the start of this litigation."). Hence, the Court declines to dismiss Britt's entire complaint under Rule 41(b).

### B. Motion to Strike

WMATA argues in the alternative that the Court should strike specific portions of Britt's complaint as well as two affidavits. See Mot. 9–10. Courts "may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Courts have "broad discretion in ruling on a motion to strike," and such motions are "disfavored." Est. of Fakhoury v. Islamic Republic of Iran, Civ. A. No. 21-1218 (JDB), 2022 WL 3355799, at *7 (D.D.C. Aug. 15, 2022) (cleaned up). Courts generally strike only allegations that are both immaterial and scandalous. See id.; see also, e.g., Parlatore v. Montalvo, Civ. A. No. 22-3106 (RDM), 2023 WL 6276639, at *4 (D.D.C. Sept. 26, 2023). An allegation is "immaterial" when "it is clear that the allegation[] in question can have no possible bearing on the subject matter of the litigation or it can be shown that no evidence in support of the allegation would be admissible."

Est. of Fakhoury, 2022 WL 3355799, at *7 (cleaned up).  An allegation is "scandalous" when it "unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court."  Id. (internal quotation marks omitted).  The moving party bears a "heavy burden" on a motion to strike.  Ecological Rts. Found. v. U.S. Env't Prot. Agency, 541 F. Supp. 3d 34, 45 (D.D.C. 2021).

Here, WMATA principally moves to strike two sets of allegations.  The first set relates to the Department's allegedly more punitive disciplinary approach towards Black officers.  See Compl. ¶¶ 33–41.  The second set relates to the allegations of two individuals, see id. ¶¶ 109–16, and affidavits submitted by these individuals that are referenced in the complaint, see Exs. 1–2 to 1st Am. Compl. for Injunctive Relief & Compensatory Damages [ECF No. 4-1] ("Aff. 1" and "Aff. 2").[3]  The first individual, Warren Donald, is a Deputy Chief in the Department and a colleague of Boehm in the Office of the Chief.  Aff. 1 ¶¶ 5–6.  He represents that he has repeatedly seen Boehm "use his power and office to pursue petty personal vendettas against subordinates" and believes Boehm harbors a "particular bias against African American . . . officers."  Id. ¶¶ 8, 10.  He represents that he twice confronted Boehm regarding Boehm's treatment of Britt: once regarding "harassment on a project [Britt] was overseeing," and once regarding a "pointless and unjustified disciplinary investigation against [her]."  Id. ¶¶ 11–12.  The other individual, Sherry Willis, is a Lieutenant in the Department and Boehm's ex-wife.  Aff. 2 ¶¶ 3, 7, 21–24.  She represents that Boehm harbors racist views towards Black people and that these views led to the dissolution of their marriage.  Id. ¶¶ 9–22.

The Court declines to strike the challenged allegations and affidavits.  To begin, WMATA has not borne its heavy burden to show that this relief is warranted.  It has not shown that the

---

[3] Britt attached these affidavits to her first amended complaint.  She did not reattach them to her second amended complaint but referenced them therein.  Compl. ¶¶ 109, 115.

allegations regarding its disciplinary approach towards Black employees are wholly immaterial to Britt's suit.  WMATA concedes that evidence of systemic discrimination may sometimes be used as "collateral evidence of an individual claim," Mot. at 9 (citing Williams v. Boorstin, 663 F.2d 109, 115 n.38 (D.C. Cir. 1980)), but contends that principle is inapplicable here because "Britt does not allege that . . . Boehm disciplined her," id.  This argument "slic[es] the baloney mighty thin."  Sessions v. Dimaya, 138 S.Ct. 1204, 1215 (2018).  While Britt was never actually "disciplined," the complaint alleges that Boehm launched a series of retaliatory, baseless investigations against her and demanded disciplinary action.  Compl. ¶¶ 92–94.  WMATA's disciplinary approach towards other Black officers is conceivably relevant to this claim.  And in any event, these disciplinary allegations are not so scandalous as to warrant striking.

The question is much closer as to Willis's affidavit.[4]  Donald's affidavit contains representations specific to his awareness of Boehm's alleged mistreatment of Britt at work.  See Aff. 1 ¶¶ 11–12. But Willis's affidavit is quite personal, largely unrelated to the work setting, and could arguably be viewed as containing scandalous material.  Britt argues that the information therein is relevant as it "gets to the heart of . . . Boehm's attitudes, beliefs, opinions, mindset and patterns of behavior." Opp'n at 13–14.  Yet this is precisely the sort of character evidence that is generally inadmissible (and thus potentially immaterial for motion-to-strike purposes).  See Fed. R. Evid. 404(a)(1).  The Court does not rely on the Willis affidavit at all, but notes that there are good arguments to strike it.  Nonetheless, in the absence of developed briefing on this issue from WMATA, see Mot. at 9–10 & 10 n.6, the Court declines to conclude that Willis's representations are necessarily inadmissible as a matter of law.  WMATA remains free to challenge any reliance

---

[4] An affidavit may not even be a "pleading" within the meaning of Rule 12(f), see Doe #1 v. Am. Fed'n of Gov't Emps., Civ. A. No. 20-1558 (JDB), 2023 WL 22059, at *2 n.4 (D.D.C. Jan. 3, 2023), but the Court need not resolve that question here.

on Willis's affidavit at summary judgment.  See Fed. R. Civ. P. 56(c)(4) (requiring, inter alia, that affidavits "set out facts that would be admissible in evidence").

The Court also declines to exercise its discretion to strike because it "need not—and did not—rely on the [challenged allegations] in resolving [WMATA's] motion."  Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec., 999 F. Supp. 2d 61, 78 (D.D.C. 2013).  WMATA would prevail as to Britt's discrimination counts even if these allegations were considered; Britt prevails as to her other counts even absent consideration of these allegations.  Hence, "the efforts of the parties and the attention of the [C]ourt are better spent on the substantive merits of the action" than on further consideration of this issue.  Jackson v. Starbucks Corp., Civ. A. No. 19-1487 (RC), 2020 WL 3791873, at *4 (D.D.C. July 7, 2020) (internal quotation marks omitted).

## II.  Discrimination Claims

Britt's complaint asserts two counts of race and sex discrimination in violation of Title VII (Counts I and VII).  WMATA argues that both counts must be dismissed because (1) Britt failed to timely exhaust her administrative remedies and (2) neither count plausibly alleges an adverse employment action.  See Mot. at 12–15.  The Court agrees with the first argument and need not reach the second.

Before a plaintiff files suit under Title VII, she must exhaust her administrative remedies by filing a timely charge with the EEOC.  See Bowden v. United States, 106 F.3d 433, 437 (D.C. Cir. 1997).  "Each discrete discriminatory act starts a new clock for filing [EEOC] charges alleging that act."  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002).  The default filing period is within 180 days of the discriminatory act.  42 U.S.C. § 2000e–5(e)(1).  But plaintiffs have an extended, 300-day period to file "in a case of an unlawful employment practice with

respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice." Id.

Here, the discriminatory acts Britt alleges in support of her discrimination claims—being ordered to proofread and edit another Captain's work and to undertake unjustified disciplinary measures against Hockaday, see Compl. ¶¶ 121–22, 190–91[5]—are directly tied to reporting to Boehm. So the latest these acts could have occurred was July 20, 2021—the day she was transferred from Boehm's direct supervision. Id. ¶ 89. Assuming, favorably to Britt, that a discriminatory act occurred on her final day reporting to Boehm, she had until either January 16, 2022 (under the 180-day rule) or May 16, 2022 (under the 300-day rule) to file an EEOC charge. The parties agree that Britt filed her first EEOC charge no earlier than February 1, 2022. See Mot. at 13; Opp'n at 10.[6] Hence, the timeliness of this charge turns on whether the 180-day or 300-day rule applies.

The Court agrees with the unanimous view of judges in this District that the 180-day rule governs Title VII suits against WMATA. "WMATA is the creation of an interstate compact entered into by Maryland, Virginia and the District of Columbia." Schindler Elevator Corp. v. WMATA, 16 F.4th 294, 297 (D.C. Cir. 2021). The D.C. Circuit has "repeatedly recognized that

---

[5] The parties focus their arguments on proofreading and editing the other Captain's work, see Mot. at 12–13; Opp'n at 15–16, but the Court reads Britt's discrimination claims to also encompass the discipline issue, see Compl. ¶¶ 122, 191. The administrative exhaustion analysis is the same as to both sets of allegations.

[6] The Court can properly consider Britt's first EEOC complaint at the motion-to-dismiss stage. This administrative complaint is incorporated by reference into Britt's present complaint, is "integral to [her] exhaustion of administrative remedies," and is also a "public record[] subject to judicial notice." Laughlin v. Holder, 923 F. Supp. 2d 204, 209 (D.D.C. 2013); see also Compl. ¶ 5.

Britt contends that she filed an EEOC charge on February 1, 2022 and later supplemented this charge. Opp'n at 10. WMATA suggests that Britt may have only filed an intake form on February 1 and thus the operative charge was not filed until April 26, 2022. See Mot. at 6 & n.5; but cf. Reddish v. Washington Metro Area Transit Auth., Civ. A. No. 22-2658 (RDM), 2023 WL 5289290, at *5 (D.D.C. Aug. 17, 2023) (noting that, depending on its factual content, "the filing of an intake questionnaire with the EEOC can . . . qualify as a 'charge'"). In any event, WMATA ultimately assumes arguendo that Britt filed a charge on February 1, 2022. See Mot. at 13.

[WMATA] is accordingly vested with the sovereign immunities, including state sovereign immunity, of the [s]ignatories." <u>Id.</u>  And "WMATA's 'governmental function' immunity encompasses 'the hiring, training, and supervision of WMATA personnel.'" <u>Oviedo v. WMATA</u>, 948 F.3d 386, 393 (D.C. Cir. 2020) (quoting <u>Jones v. WMATA</u>, 205 F.3d 428, 432 (D.C. Cir. 2000)).

The D.C. Circuit has reserved on the effect of this immunity on Title VII's filing periods. <u>See</u> <u>Simpkins v. WMATA</u>, No. 96-7188, 1997 WL 702349, at *3 (D.C. Cir. Oct. 10, 1997).  But judges in this District and elsewhere have concluded that this immunity means that WMATA is not subject to state or local antidiscrimination laws—and thus that state and local antidiscrimination agencies lack "authority to grant or seek relief" against WMATA in relation to its employment practices.  <u>See</u> <u>Reddish v. WMATA</u>, Civ. A. No. 22-2658 (RDM), 2023 WL 5289290, at *5 n.2 (D.D.C. Aug. 17, 2023); <u>Ferguson v. WMATA</u>, 630 F. Supp. 3d 96, 110 n.9 (D.D.C. 2022), <u>aff'd</u>, No. 22-7142, 2024 WL 2052016 (D.C. Cir. May 8, 2024); <u>Whorton v. WMATA</u>, 924 F. Supp. 2d 334, 345 n.8 (D.D.C. 2013); <u>see also</u> <u>Pritchard v. Metro. Washington Airports Auth.</u>, Civ. A. No. 118-1432 (AJT/TCB), 2019 WL 5698660, at *10 n.8 (E.D. Va. Nov. 4, 2019), <u>aff'd</u>, 860 F. App'x 825 (4th Cir. 2021); <u>Bowman-Cook v. WMATA</u>, Civ. A. No. 14-1877 (DKC), 2017 WL 3592450, at *6 n.5 (D. Md. Aug. 21, 2017).  The Second Circuit has reached the same conclusion with respect to the Port Authority of New York and New Jersey, another interstate compact.  <u>See</u> <u>Dezaio v. Port Auth. of NY & NJ</u>, 205 F.3d 62, 65–66 (2d Cir. 2000) (holding that "to apply unilaterally New York's human rights laws in this case would violate the bi-state Compact," and thus that the state antidiscrimination agency lacked jurisdiction and the default 180-day filing period applied).

The Court finds the foregoing reasoning persuasive and adopts it here.  Accordingly, the 300-day provision is inapplicable and the 180-day provision controls.  See 42 U.S.C. § 2000e–5(e)(1); see also 29 C.F.R. § 1601.13(a)(2) ("Charges over which a [state or local] agency has no jurisdiction . . . are timely filed if received by the [EEOC] within 180 days from the date of the alleged violation.").  And, under the 180-day provision, Britt's first EEOC charge was untimely with respect to discrete discriminatory actions during the period she reported directly to Boehm.

Britt's counterarguments are not persuasive.  She maintains that the foregoing timing requirements do not apply because she has alleged other discriminatory and retaliatory conduct extending into fall 2021 and beyond.  See Opp'n at 14–16.  But, following the Supreme Court's decision in Morgan, the "continuing violation" theory on which Britt relies applies only to hostile work environment claims, not to discrete discrimination claims.  536 U.S. at 114–121.  As to discrimination claims, plaintiffs must timely exhaust administrative remedies with respect to "[e]ach incident of discrimination" underpinning those claims.  Id. at 114.  And that is precisely what WMATA argues Britt failed to do here with respect to the conduct alleged in Counts I and VII.  WMATA does not challenge Britt's separate hostile work environment or retaliation claims as untimely exhausted.

Britt also suggests that her discrimination claims may be subject to equitable tolling.  Opp'n 16–17.  She develops no meaningful argument on this point, but rather suggests that consideration of any tolling is premature.  See id.  Britt is correct that affirmative defenses can generally only be decided on a motion to dismiss when the facts giving rise to the defense are conclusively established by materials properly considered at the motion-to-dismiss stage.  Id. (citing, inter alia, de Csepel v. Republic of Hungary, 714 F.3d 591, 608 (D.C. Cir. 2013)).  But that is the case here: there is no dispute that Britt filed her first EEOC charge no earlier than February 1, 2022.  And

once WMATA established that Britt did not timely exhaust her administrative remedies, the burden shifted to Britt to demonstrate that tolling was warranted.  Britt has made no attempt to carry this burden.  Accordingly, the Court will dismiss Britt's two discrimination claims for failure to timely exhaust administrative remedies.  See, e.g., Tumblin v. United States Dep't of Just., No. 22-5322, 2024 WL 251497, at *1 (D.C. Cir. Jan. 23, 2024) (per curiam) (affirming dismissal where the defendant successfully raised an "untimely exhaustion" defense and the plaintiff "failed to show that equitable tolling was warranted"); Beckwith v. Ware, No. 15-5102, 2015 WL 9005393, at *1 (D.C. Cir. Nov. 6, 2015) (per curiam) (similar).

## III.   Hostile Work Environment Claims

WMATA also moves to dismiss Britt's three hostile work environment claims (Counts III, V, and IX) for failure to state a claim.  See Mot. at 20–25.[7]  "A plaintiff pleading a hostile work environment claim must show that he was exposed to 'discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  Durant v. D.C. Gov't, 875 F.3d 685, 700 (D.C. Cir. 2017) (quoting Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993)).  "There must be a linkage between the hostile behavior and the plaintiff's membership in a protected class for a hostile work environment claim to proceed."  Doe #1 v. Am. Fed'n of Gov't Emps., 554 F. Supp. 3d 75, 107 (D.D.C. 2021) (internal quotation marks omitted).  This standard governs hostile work environment claims under both Title VII and § 1981.  See Yazzie v. Nat'l Org. for Women, Civ. A. No. 09-3845 (RDM), 2024 WL 230244, at *18 (D.D.C. Jan. 22, 2024).  In assessing a hostile

---

[7] WMATA briefly argues that "there is no basis to hold [it] liable" for these claims because Britt "fails to allege facts which show WMATA was aware of . . . Boehm's alleged conduct."  Mot. at 25.  WMATA appears to confuse the standard for hostile work environment liability as to coworkers and as to supervisors.  "When, as here, the plaintiff is harassed by [a] supervisor[] with immediate (or . . . higher) authority, the supervisor[] [is] treated as the employer's proxy."  Ayissi-Etoh v. Fannie Mae, 712 F.3d 572, 577 (D.C. Cir. 2013) (internal quotation marks omitted).  "In that circumstance, the employer is vicariously liable for [the] supervisor's actions," except under circumstances not relevant here.  Id. at 577–78.

work environment claim, courts consider the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Durant, 875 F.3d at 700 (quoting Harris, 510 U.S. at 23).

Here, Britt alleges that Boehm yelled at her, belittled her, and humiliated her in front of colleagues; denied her proper staffing, micromanaged her work, and contacted her on leave; worked around her and undermined her authority; lied about her performance to stymie her career advancement; and launched baseless investigations against her, among other things. See Compl. ¶¶ 56, 70–88, 92–95. She further alleges that an internal EEO investigation substantiated her claim that Boehm discriminated against her based on her race and gender. Id. ¶ 90. And she alleges that Boehm's actions affected her blood pressure, led her to seek mental health counseling, and ultimately led her to put in her retirement papers. Id. ¶¶ 105–07.

The Court concludes that these allegations are sufficient to plausibly state a hostile work environment claim at this early stage of the case. To be sure, courts set a high bar for hostile work environment claims—Title VII is not a "general civility code for the American workplace," and "not everything that makes an employee unhappy" supports a hostile work environment claim. Whorton, 924 F. Supp. 2d at 349–50 (internal quotation marks omitted). And some of Britt's allegations are relatively light on factual enhancement. But, "[w]hile the parties' evidence may reveal that the alleged misconduct does not rise to the level of severity or pervasiveness called for by the law or was not discriminatory, the conduct as stated is sufficiently offensive and frequent to survive a motion to dismiss." Moore v. Castro, 192 F. Supp. 3d 18, 47 (D.D.C. 2016), aff'd sub nom. Moore v. Carson, 775 F. App'x 2 (D.C. Cir. 2019). And the fact that an internal investigation

allegedly substantiated Britt's claims of discrimination lends support to a showing of discriminatory motivation.  See Compl. ¶ 90; Doe #1, 554 F. Supp. 3d at 107.

## IV.    Retaliation Claims

Finally, WMATA moves to dismiss Britt's five retaliation claims (Counts II, IV, VI, VIII, and X) for failure to state a claim.  See Mot. at 15–20.  Title VII prohibits retaliation against an employee "because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).  To make out a Title VII retaliation claim, a plaintiff must plausibly allege (1) that she "engaged in statutorily protected activity," (2) that the defendant "took a materially adverse action" against her, and (3) that her "protected activity was a but-for cause of that adverse action."  Ho v. Garland, No. 22-5219, 2024 WL 3260764, at *3 (D.C. Cir. July 2, 2024) (internal quotation marks omitted).  A materially adverse action in this context is one that would have "dissuaded a reasonable worker from making or supporting a charge of discrimination."  Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (internal quotation marks omitted).  The framework for § 1981 retaliation claims is much the same: "a plaintiff must show that he engaged in protected activity . . . and that his employer took an adverse employment action against him because of that activity."  Ayissi-Etoh v. Fannie Mae, 712 F.3d 572, 578 (D.C. Cir. 2013).

Britt's allegations across her retaliation counts are not a model of clarity, but she appears to assert retaliation claims premised on two materially adverse actions: a retaliatory hostile work environment and her non-selection for the Deputy Chief position.  See, e.g., Compl. ¶¶ 134–37.[8]

---

[8] Britt's complaint also alleges that the disciplinary investigations launched by Boehm were retaliatory.  See Compl. ¶¶ 135, 144, 203.  In her briefing, however, Britt treats these allegations as part and parcel of her hostile work environment retaliation allegations rather than as distinct retaliation claims, see Opp'n at 21–29, and the Court will therefore do the same.  In any event, it is not clear that these investigations would be independently actionable absent

As to the first: a retaliatory hostile work environment can be an adverse action for purposes of a retaliation claim.  See Baird v. Gotbaum, 792 F.3d 166, 168 (D.C. Cir. 2015) (recognizing this as "a special type of retaliation claim").   Britt alleges that Boehm created the hostile work environment principally as retaliation for her protected activity in opposing Boehm's requests to take discriminatory disciplinary measures against Hockaday.  See Opp'n at 19–20; see also, e.g., Compl. ¶¶ 132, 200.[9]  WMATA responds that Britt has failed to plausibly allege that this was in fact protected activity because the complaint does not expressly allege that Britt told Boehm in as many words that his demands were racist and sexist.   See Mot. at 16–17; see also Broderick v. Donaldson, 437 F.3d 1226, 1232 (D.C. Cir. 2006) ("While no 'magic words' are required, the [workplace] complaint must in some way allege unlawful discrimination . . . .").  The complaint's allegations on this point are admittedly a bit ambiguous.  But, drawing reasonable inferences in Britt's favor, the Court concludes that Britt has plausibly alleged that she communicated to Boehm that her refusal to execute his orders regarding Hockaday was based on the view that they were discriminatory.  See, e.g., Compl. ¶¶ 62–63.  Britt has also plausibly alleged the existence of a hostile work environment, see supra Part III, and WMATA does not otherwise challenge Britt's

---

"materially adverse consequences" such as a financial impact.  Truesdale v. District of Columbia, Civ. A. No. 21-315 (DLF), 2023 WL 387571, at *4 (D.D.C. Jan. 25, 2023); see also King v. Holder, 77 F. Supp. 3d 146, 151–52 (D.D.C. 2015).

[9] To the extent Britt maintains that the hostile work environment continued even after she left Boehm's supervision (e.g., via the disciplinary investigations), the internal EEO complaint may also represent protected activity. WMATA maintains that there is no but-for causation because Britt has not specifically alleged that Boehm was aware of this filing.  See Mot. at 17.  But the complaint's allegations support a reasonable inference that Boehm was aware— particularly as this filing occasioned an "extensive investigation" that involved interviewing multiple officers.  Compl. ¶¶ 90–92. And a plaintiff generally need not include direct allegations of a supervisor's knowledge to survive a motion to dismiss when circumstantial evidence supports that inference.  See Golden v. Mgmt. & Training Corp., 319 F. Supp. 3d 358, 374 (D.D.C. 2018); McManus v. Kelly, 246 F. Supp. 3d 103, 116 (D.D.C. 2017); Uzoukwu v. Metro. Wash. Council of Gov'ts, 27 F. Supp. 3d 62, 72 (D.D.C. 2014).

retaliatory hostile work environment claim based on the refusal to discipline Hockaday.[10] Accordingly, this claim survives WMATA's motion to dismiss.

Britt also asserts retaliation claims based on WMATA's failure to promote her to the open Deputy Chief position. WMATA does not meaningfully contest that the non-selection could be an adverse action or that Britt's preceding internal EEO complaint and first EEOC complaint were protected activity; rather, the parties' dispute focuses on whether Britt has pleaded sufficient facts to support a plausible inference that her protected activity was a but-for cause of her non-selection. See Mot. at 18–19; Opp'n at 22–23. WMATA principally argues that the eleven-month gap between, on the one hand, Britt's complaints to Chief Anzullo and her first EEOC complaint (in April 2022), and, on the other, her non-selection (in March 2023) is too long to support an inference of causation based on temporal proximity. Mot. at 19.[11]

---

[10] WMATA does not otherwise argue that the action "opposed" by Britt (i.e., disciplining Hockaday) was not an "unlawful employment practice" under Title VII, 42 U.S.C. § 2000e-3(a), so the Court need not reach this question (which may turn in part on the nature of Boehm's requested discipline).

The Court also observes that the alleged hostile work environment may have predated Britt's refusal to discipline Hockaday—though the complaint's lack of specificity regarding timing complicates the inquiry. Britt's complaint alleges that, due to Britt's refusal to discipline Hockaday, Boehm "threatened to demote [Britt], threatened to rescind her position, screamed at her over the phone, attempted to bully and intimidate [her], and launched baseless and unfounded disciplinary action against her," Compl. ¶ 63, and that "[f]rom that point on" Boehm "constantly undermin[ed] [her] authority" and "question[ed] her performance and leadership," id. ¶ 68. But the complaint also alleges that, prior to this refusal, Boehm was already "biased against [Britt]" and "undermined" her, including by "denying her proper staffing." Id. ¶¶ 55–56. To the extent a hostile work environment already existed before Britt's alleged protected activity and did not meaningfully change after this activity, that might undermine a showing of but-for causation. See, e.g., Erno v. N.Y. State Off. of Info. Tech. Servs., Civ. A. No. 119-1457 (NAM/TWD), 2022 WL 1224325, at *7 (N.D.N.Y. Apr. 26, 2022); Ross v. UChicago Argonne, LLC, Civ. A. No. 18-4200 (JTG), 2020 WL 2041338, at *10 (N.D. Ill. Apr. 28, 2020). But WMATA does not advance this argument, so the Court will not consider it further now.

[11] WMATA also argues that Britt has not alleged that Anzullo was aware of her first EEOC charge. See Mot. at 19. But circumstantial evidence—including the fact that Britt met with Anzullo about her concerns roughly contemporaneously with filing this charge—tends to support an inference of his awareness. See, e.g., Golden, 319 F. Supp. 3d at 374. In any event, it is undisputed that Britt has plausibly alleged Anzullo's awareness of the internal EEO complaint and investigation. See Compl. ¶¶ 98–99.

The Court agrees that the eleven-month gap, without more, is too long to support an inference of causation. See Ho, 2024 WL 3260764, at *3; Pueschel v. Chao, 955 F.3d 163, 167 (D.C. Cir. 2020). But the D.C. Circuit has cautioned district courts not to focus only on timing where other allegations also bear on causation. See Ho, 2024 WL 3260764, at *3; Harris v. D.C. Water & Sewer Auth., 791 F.3d 65, 69 (D.C. Cir. 2015). And here, Britt has alleged facts beyond just temporal proximity. She alleges that Anzullo—the decisionmaker with respect to the non-selection decision, see Compl. ¶ 101; Ex. 2 to Mot. [ECF No. 19-3] at 2—previously declined to take action against Boehm even though an internal investigation substantiated Britt's claims of discrimination against him, see Compl. ¶¶ 98–99. She alleges that the man who ultimately got the open Deputy Chief position had "less seniority" and "substantially less experience in patrol operations" than her. Compl. ¶ 101; see Ho, 2024 WL 3260764, at *5 (giving weight to allegations suggesting that plaintiff was "well-qualified for the position"). She alleges that WMATA has a history of denying advancement opportunities to Black women. See Compl. ¶¶ 31–32, 46.[12] And she alleges a pattern of discriminatory treatment "in the time period between [her] protected activity and the adverse employment action," Jones v. District of Columbia, Civ. A. No. 23-1488 (BAH), 2024 WL 1213326, at *9 (D.D.C. Mar. 21, 2024) (internal quotation marks omitted)—a pattern carried out by Boehm but implicitly countenanced by Department leadership, see Compl. at 3–4, ¶ 99. Together, these allegations are sufficient to "nudge[]" Britt's failure-to-promote retaliation claim "across the line from conceivable to plausible." Ho, 2024 WL 3260764, at *6 (internal quotation marks omitted).

---

[12] This suit concerns Britt's individual discrimination and retaliation claims, not WMATA's broader employment practices. But at summary judgment and trial, a plaintiff may show that an employer's proffered justification for an adverse action is pretextual by pointing to differential treatment of "similarly situated persons of a different race or sex." Wheeler v. Georgetown Univ. Hosp., 812 F.3d 1109, 1115 (D.C. Cir. 2016) (internal quotation marks omitted); see also Walker v. Johnson, 798 F.3d 1085, 1092 (D.C. Cir. 2015). Accordingly, it stands to reason that allegations of a pattern of differential treatment are at least somewhat relevant at the motion-to-dismiss stage.

Hence, the Court concludes that Britt has plausibly stated retaliation claims based both on a retaliatory hostile work environment and her non-selection for the Deputy Chief position.

## **Conclusion**

For the foregoing reasons, the Court will grant WMATA's motion as to Britt's discrimination claims but deny it as to Britt's hostile work environment and retaliation claims. An accompanying Order will issue on this date.


_____/s/_____
JOHN D. BATES
United States District Judge

Dated: July 23, 2024