UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

REBECCA BRITT,

    Plaintiff,

    v.

WASHINGTON METROPOLITAN
AREA TRANSIT AUTHORITY,

    Defendant.

Civil Action No. 23-844 (JDB)

## MEMORANDUM OPINION

Rebecca Britt sued her former employer, the Washington Metropolitan Area Transit Authority (WMATA), under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. After two amendments to the complaint and multiple rounds of briefing on WMATA's motions to dismiss the first and second amended complaints, the Court dismissed Britt's claims for disparate treatment based on her race and sex as untimely exhausted but denied the motion as to all other claims, which alleged a hostile work environment based on Britt's race and sex and retaliation for seeking redress. Britt now seeks reconsideration of the order dismissing her disparate treatment claims, arguing that the Court misapprehended the timeline of the disparate treatment alleged in her Second Amended Complaint (hereinafter "complaint"). Pl.'s Mot. for Recons. of Ct.'s Dismissal of Counts I & VII on Timeliness Grounds [ECF No. 33] ("Mot.") at 4. Because Britt has not shown her entitlement to that rare form of relief, the Court will deny her motion.

### Background

The earlier Memorandum Opinion on the operative motion to dismiss describes the allegations in greater detail, but here are the broad strokes as relevant to this reconsideration motion. See Mem. Op. [ECF No. 23] at 2–5. Britt's complaint raised three types of claims. Counts

1

I and VII claimed that her former supervisor, WMATA Deputy Chief Stephen Boehm, subjected her to disparate treatment on the basis of her race and sex while he supervised her from August 2020 to July 2021.  See 2d Am. Compl. Inj. Relief & Compensatory Damages [ECF No. 17] ("Compl.") ¶¶ 24, 89; see also id. ¶¶ 118–29, 187–97.[1]  Immediately after being transferred out of Boehm's supervision, Britt filed an internal complaint regarding that treatment, and alleges that she then suffered retaliation for complaining—and so Counts II, IV, VI, VIII, and X raised retaliation claims.  See Compl. ¶¶ 130–40, 149–58, 176–86, 198–208, 218–27.  Finally, Counts III, V, and IX alleged that all that mistreatment combined to create a hostile work environment.  See Compl. ¶¶ 141–48, 159–75, 209–17.

WMATA moved to dismiss all counts.[2]  As relevant here, it moved to dismiss Counts I and VII—the disparate treatment counts—as untimely exhausted.  See Def.'s Mem. Law Supp. Mot. to Dismiss Pl.'s 2d Am. Compl. [ECF No. 19-1] ("Mot. to Dismiss") at 12–13.  WMATA pointed out that Title VII required Britt to complain to the Equal Employment Opportunity Commission (EEOC) within 180 days of the acts of disparate treatment for which she wished to sue.  Id. & n.7.  But the disparate treatment counts, WMATA observed, relied only on Boehm's actions while Britt was under Boehm's supervision—which Britt had escaped more than 180 days before filing her first complaint.  Id. at 13.

Rather than dispel the premise for the untimeliness argument—that her disparate treatment claims relied only on Boehm's supervisory treatment of her—Britt's opposition embraced it, and simply insisted that it didn't matter.  Her primary rejoinders were legal arguments about the

---

[1] On pages 26 to 27 of the complaint, the paragraphs' numbering restarts after paragraph 178 and then resumes at 179 ten paragraphs later.  Because the Court does not cite any of the interrupting paragraphs individually, it cites to the complaint as labeled without regard to this hiccup.

[2] Since then, the parties have stipulated to the dismissal of Counts V and VI.  See Def.'s Mot. to Dismiss Counts V &VI of Pl.'s 2d Am. Compl. for Lack of Subj. Matter Jurisd. [ECF No. 27]; Pl.'s Notice Voluntary Withdrawal Counts V & VI of 2d Am. Compl. [ECF No. 32].

2

operation of the exhaustion requirement, not factual ones urging the Court to read her complaint more capaciously. First, she maintained that a 300-day deadline, not an 180-day deadline, applied to her claims—and so her claim was timely exhausted because her disparate treatment continued "until Plaintiff stopped working for DC Boehm in July of 2021," less than 300 days before she filed her EEOC charge. Pl.'s Opp'n to Mot. to Dismiss [ECF No. 21] ("Opp'n to Mot. to Dismiss") at 15–17. Second, she maintained that a "continuing violation" theory could save her claims even from a 180-day deadline because Boehm's "ongoing acts . . . lingered." Id.

Britt's argument on the merits similarly relied only on the allegations from her time under Boehm. In its motion to dismiss, WMATA had argued that, even if the disparate treatment claims were timely exhausted, they failed to state a Title VII claim on their merits: according to WMATA, the actions Boehm took against Britt while her supervisor—the only conduct the complaint relied upon to substantiate its disparate treatment allegations—were insufficiently serious to offend Title VII. See Mot. to Dismiss at 13–15. Britt's rebuttal took the premise as given, relying only on treatment she endured while under Boehm's supervision to explain why her disparate treatment claims should survive. See Opp'n to Mot. to Dismiss at 18–19.

So the Court took Britt at her word. It resolved the legal questions in WMATA's favor: the 180-day deadline applied, and the continuing violation theory can save only hostile work environment claims, not disparate treatment ones. Mem. Op. at 11–14 (citing Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114–21 (2002)). And applying those holdings to the facts as alleged, the Court determined the disparate treatment claims could not survive, as they relied on actions taken while Britt was under Boehm's supervision—necessarily more than 180 days before Britt's first EEOC complaint. Id. at 12.[3]

---

[3] Meanwhile, the Court denied the motion to dismiss on all other counts, allowing those to go forward. Mem. Op. at 15–21.

Britt now accepts the correctness of both legal determinations. See Mot. at 9. But she contends that the Court erred in applying those rules to the allegations here because (she argues now for the first time) her disparate treatment claims do not, in fact, rely only on actions taken by Boehm as her supervisor. Instead, she says, her disparate treatment claims also relied all along on Boehm's "disparate treatment and retaliatory action after [Britt] was no longer reporting to him." Mot. at 7.

**Legal Standard**

Before reaching the merits of Britt's reconsideration motion, the Court must address the vehicle she uses to bring it. Both Britt and WMATA style the motion as one under Federal Rule of Civil Procedure 60(b), which permits a court to "relieve a party . . . from a final judgment, order, or proceeding" under certain (and highly constrained) circumstances. Fed. R. Civ. P. 60(b). But as its text makes clear, the rule applies only to final judgments, not interlocutory ones. See Assoc. Mortg. Bankers, Inc., v. Carson, Civ. A. No. 17-75 (ESH), 2019 WL 2996992, at *2–3 (D.D.C. July 9, 2019). A final judgment or order is one "that terminate[s] litigation and [is] subject to appeal." Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv., 886 F.3d 803, 816 (9th Cir. 2018). The Court's earlier Memorandum Opinion and accompanying Order, which granted in part and denied in part WMATA's motion to dismiss, is not final: it does not terminate the litigation and, absent certification as a partial final judgment under Federal Rule of Civil Procedure 54(b), is not appealable. See Black Lives Matter D.C. v. Trump, 720 F. Supp. 3d 1, 13 (D.D.C. 2024); see also Potts v. Howard Univ. Hosp., 623 F. Supp. 2d 68, 70 (D.D.C. 2009) (partial grant of motion to dismiss not final order for Rule 60(b) purposes).

So Rule 60(b) is of no use here. But that is good news, not bad news, for Britt. The proper rule for requesting reconsideration of an interlocutory order is the "more flexible" Rule 54(b),

4

which permits the Court to "revise[]" such an order "at any time before the entry of a judgment." Carson, 2019 WL 2996992, at *3 (first quoting Cobell v. Norton, 224 F.R.D. 266, 272 (D.D.C. 2004); then quoting Fed. R. Civ. P. 54(b)). Revision should be granted "as justice requires"—for instance, if the Court "has patently misunderstood a party, has made a decision outside the adversarial issues presented to the court by the parties, has made an error not of reasoning, but of apprehension, or where a controlling or significant change in the law or facts has occurred since the submission of the issue to the court." Potts, 623 F. Supp. 2d at 71 (cleaned up). Despite its more permissive nature, however, a Rule 54(b) motion does not grant a do-over; the Court's discretion is "subject to the caveat that, where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." Id. (internal quotation marks omitted).

**Analysis**

In trying for a second battle, Britt takes two stabs at reframing her case. First, she insists that the Court simply misread her complaint and briefing. Mot. at 4. Second, she offers that, even if the Court was right to dismiss on the materials then before it, "recently obtained evidence" shows that her disparate treatment claims must survive. Id. at 1. This evidence comes in the form of two emails that she sent to colleagues complaining of Boehm's behavior after being removed from his supervision—and within the 180-day window. See Exs. 2 & 3 to Mot. [ECF No. 33-1 at 23–29]. Britt says she may submit these emails now because she did not have access to them when she filed her Second Amended Complaint. Mot. at 7. As she says in a newly filed declaration, these emails show that her complaint "contains some, but not every act of discrimination and retaliation that DC Boehm took against" her. Ex. 5 to Mot. [ECF No. 33-1 at 34–35] ("Britt Decl.") ¶ 10. Both arguments fail, however, even under the more generous Rule 54(b).

5

I.       **The Court did not misunderstand Britt's submissions.**

As for the first argument, the Court did not "patently misunderst[and]" Britt's submissions. See Potts, 623 F. Supp. 2d at 71. It took them as written. Both the complaint and the briefing scaffolded the disparate treatment claims exclusively with actions Boehm took as Britt's supervisor. This was true through multiple rounds of motions to dismiss: after WMATA's motion to dismiss the First Amended Complaint on timeliness grounds, see Def.'s Mem. Law Supp. Mot. to Dismiss Pl.'s 1st Am. Compl. [ECF No. 9-1] at 11, Britt's Second Amended Complaint made no effort to clarify that the disparate treatment claims relied on anything but Boehm's supervisory actions, see Ex. 2 Mot. to Amend Am. Compl. [ECF No. 15-2] ¶¶ 118–29, 187–97. And Britt did not fill that gap in her briefing. In her opposition to the motion to dismiss, she argued only for different deadlines—not, with two fleeting exceptions discussed below, that different discriminatory conduct showed she satisfied the correct deadline.

Now, having lost the legal fight over the statutory exhaustion deadline, Britt wishes to backtrack. She makes much of a few hints scattered in the briefing and complaint that, in her view, show her disparate treatment claims were partially based on acts Boehm took after Britt was transferred away from his supervision. But these hints don't come close to establishing that the Court "patently misunderstood" her. See Potts, 623 F. Supp. 2d at 71.

Consider first the briefing. The hints came in two offhand comments, one where Britt mentioned that Boehm's "antagonistic, disparate and retaliatory treatment of [her] carried on well after the time she stopped working for him," and one where she suggested that even if her 300-day deadline were wrong, Boehm's "ongoing acts against Plaintiff lingered such that even a 180[-]day statute of limitation would be satisfied." Opp'n to Mot. to Dismiss at 16–17. But she did not elaborate on either comment, and in context they seem to refer to the continuing-violation theory

6

that the Court subsequently rejected.[4]  If she meant Boehm's "linger[ing]" post-supervision acts to stand alone as disparate treatment claims, it would have been odd indeed for her not to discuss them when explaining why her disparate treatment claims should survive on the merits.

The complaint fares no better.  Britt points first to two paragraphs in Count I that she says make clear that she intended to raise a disparate treatment claim for actions Boehm took after Britt left his supervision.  See Mot. at 9.  The paragraphs read in full:

> 126. DC Boehm's acts towards Plaintiff and her Black subordinates created a very hostile and stressful work environment for Plaintiff.
> 127. As a direct and proximate cause of the disparate treatment Plaintiff was subjected to, Plaintiff suffered from severe mental stress and anxiety, such that she required intervention from a medical provider.

Compl. ¶¶ 126–27.  These allegations self-evidently do not do what Britt would have them do.  They say nothing about timing, or even allege any specific act at all.  So they do not extend the temporal scope of Britt's disparate treatment claims.

Britt also highlights the language her complaint repeated at the beginning of each claim purporting to "incorporate[] and reference[] all allegations in the previous paragraphs as if fully restated herein."  See Compl. ¶¶ 118, 187; see also id. ¶¶ 130, 141, 149, 159, 176, 198, 209, 218.  As Britt would have it, this boilerplate statement—although made nine other times throughout the complaint—made clear that Britt intended to bring paragraphs 93 through 97 within the purview of the disparate treatment claims.  Those paragraphs, which appeared under the "Post-Complaint Retaliation" heading, discussed the "retaliatory campaign" Boehm allegedly undertook after Britt complained about him—and, crucially for Britt, after she was no longer under Boehm's supervision.

---

[4] Britt no longer contends that the continuing-violation theory applies to disparate treatment claims, nor could she in light of the Supreme Court's square holding in Morgan, 536 U.S. at 113.  See Mot. at 9.

But Britt places too much weight on the incantation of "all allegations in the previous paragraphs." This routine language cannot obfuscate what the organization of the complaint and the argument in the briefing make evident: that she was suing for disparate treatment she suffered while under Boehm's supervision, and that paragraphs 93 through 97 substantiated her retaliation claims, not her disparate treatment ones. Britt would have this language obligate the Court to disregard her consistent framing of her own case and instead search the complaint high and low for any allegations that could support a timely claim of each sort. That is not the Court's job, and in light of the consistent messaging throughout the complaint and the briefing, it cannot be said that the Court "patently misunderstood" Britt's claims when it took her word for what those claims were. See Potts, 623 F. Supp. 2d at 71; cf. United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991) (per curiam) ("Judges are not like pigs, hunting for truffles buried in briefs.").[5]

## II.     The new emails do not change the outcome.

Perhaps recognizing that the Court resolved the motion to dismiss in line with what was in front of it then, Britt's second argument attempts to place new materials—the emails—before the Court now. But these emails do not amount to a "significant change in the . . . facts," Potts, 623 F. Supp. 2d at 71 (quoting Cobell, 224 F.R.D. at 272), for the simple reason that this is a motion to dismiss a complaint. A complaint need not—indeed, should not—present evidence substantiating its allegations. All it does is allege. And nothing prevented Britt from alleging the

---

[5] The Court notes that this ruling does not change the acts for which WMATA may be held liable. By now, all agree that the only (plausibly) timely exhausted acts of disparate treatment are those that occurred within 180 days prior to the EEOC complaint—that is, after Britt left Boehm's supervision. See Mot. at 9 (not challenging the ruling "that the only acts [of disparate treatment] that Plaintiff could pursue in this case are those that took place within 180 days of when she filed her EEOC charge on February 1, 2022"). And the only allegations Britt highlights that fall within this time period already underpin Britt's other claims—claims that the Court did not dismiss. So those allegations remain in this case, and they remain potential bases of liability for WMATA. They simply do not give rise to a claim for disparate treatment under Count I or VII, as Britt has not shown her entitlement to reconsideration of the dismissal of those counts.

8

events underlying these emails in any of her three complaints. She was plainly aware of the events the emails recounted, as she sent the emails and they describe things she says happened to her. If she wanted the Court to consider those events, she should have included them in her complaint. This reconsideration motion cannot rescue her from her "voluntary, deliberate, free, untrammeled choice" not to do so. Black Lives Matter D.C., 720 F. Supp. 3d at 13–14 (quoting Ackermann v. United States, 340 U.S. 193, 200 (1950)).[6]

## Conclusion

For the above reasons, the Court will deny Britt's motion for reconsideration. A separate order will issue.

/s/
JOHN D. BATES
United States District Judge

Dated: December 13, 2024

---

[6] It is also worth noting that the only time Britt lacked access to the emails was when she filed the Second Amended Complaint and associated briefing. Because she remained employed by WMATA until then, she had access to the emails when she filed her initial Complaint and First Amended Complaint, see ECF Nos. 1, 4, and when opposing WMATA's motion to dismiss the First Amended Complaint, see ECF No. 12. In other words, if Britt wished to verify the content and timing of the emails before alleging the events they involve, she had ample opportunity to do so.